UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VITALIZE OFFICIAL LLC,<br><br>    PLAINTIFF,<br><br>V.<br><br>THE PARTNERSHIPS IDENTIFIED ON SCHEDULE A,<br><br>    DEFENDANTS. | CASE NO.: 1:25-CV-06518<br><br>HONORABLE JUDGE EDMOND E. CHANG<br><br>MAGISTRATE JUDGE GABRIEL A. FUENTES |

## AMENDED COMPLAINT

Plaintiff, Vitalize Official LLC ("Vitalize" or "Plaintiff"), by its undersigned counsel, hereby complains of the Partnerships identified on the Amended Schedule A, attached hereto (collectively, "Defendants"), and using at least the identified online marketplace accounts listed therein (collectively, the "Defendant Internet Stores" or "Seller Aliases"), and for its Amended Complaint hereby alleges as follows:

### JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, the Federal Copyright Act, 17 U.S.C. § 501, *et seq.*, and 28 U.S.C. § 1338(a)-(b), 28 U.S.C. § 1331.

2. This Court has personal jurisdiction over Defendants, in that each Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit, of which Defendants stand accused, were undertaken in Illinois and within this Judicial District.

1

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, since Defendants directly target consumers in the United States, including Illinois, through the fully interactive, commercial Internet stores operating under the Seller Aliases. Defendants have targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold, and continued to sell counterfeit products that infringe upon Plaintiff's trademarks and/or copyrights. Defendants are committing tortious acts, engaging in interstate commerce, and have wrongfully caused substantial injury in the State of Illinois.

## JOINDER

4. Joinder is proper pursuant to Federal Rule of Civil Procedure 19(a) as Plaintiff's right to relief stems from the same individual or individuals and that, in the absence of any of these Defendants, the Court cannot complete relief among existing parties and that a Defendant may incur multiple or otherwise inconsistent obligations via separate court rulings.[1]

5. Plaintiff has filed, attached hereto, its Amended Schedule A, the list of Seller Aliases found to be selling infringing products. Upon information and belief, the Defendant Internet Stores are owned and/or operated by at least one common individual.

6. In Plaintiff's experience, the Seller Aliases included in the Amended Schedule A are owned and/or operated by the same individual and/or entity. However, it is not until the third-party marketplace produces the full and uncensored registration data for these stores that Plaintiff will discover the identity or identities of the individuals and/or entities operating under the Seller Aliases.

---

[1] *See also* Plaintiff's Memorandum in Support of Joinder, which Plaintiff will file concurrently with this Amended Complaint.

7. Given the similarities between the Defendant Internet Stores, the strong likelihood that they are owned and/or operated by the same individual and/or entity, and the factual evidence presented which shows that Defendants are acting in active concert with one another and are logically related, for purposes of judicial efficiency, Plaintiff asserts that joinder of all Defendants is proper at this stage. Additionally, severing the case would mean that multiple stores with the same owner and/or operator would be adjudicated piecemeal and/or would need to be re-joined at a later date.

## INTRODUCTION

8. This action has been filed to combat the online trademark and copyright infringement activity of Defendants, who trade upon Plaintiff's valuable trademarks and/or copyrights by selling and/or offering for sale unauthorized, inauthentic, infringing, and counterfeit products in connection with Plaintiff's federally registered trademarks, as well as to stop and prevent Defendants' selling of unauthorized products that use, are based on, and/or are derived from copyrighted subject matter created by the Plaintiff.

9. Plaintiff is the owner of several federally registered trademarks (referred to herein as the "Supercalm Trademarks") and federally registered copyrights (referred to herein as the "Supercalm Copyrights"). The Supercalm Trademarks and Supercalm Copyrights (collectively referred to as "Vitalize Intellectual Property" or "Plaintiff's Intellectual Property") are listed in the table below, and are attached hereto as **Exhibit 1** and **Exhibit 2**, respectively.

| **SUPERCALM TRADEMARKS** | | | |
|---|---|---|---|
| **REG. NO.** | **WORD/DESIGN MARK** | **CLASS(ES)** | **REG. DATE** |
| 7,158,736 | SUPERCALM | IC 005: Dietary and nutritional supplements; Dietary supplement drink mixes; Natural dietary supplements for the treatment of stress; Natural supplements for treating depression and anxiety; Powdered nutritional supplement drink mix | Sep. 05, 2023 |
| 7,242,188 | NELLO | IC 005: Powdered nutritional supplement drink mix for human consumption | Dec. 12, 2023 |
| 7,800,114 | SUPERCALM | IC 005: Powdered nutritional supplement drink mix for human consumption. | May 20, 2025 |
| 7,800,113 | nello | IC 005: Powdered nutritional supplement drink mix for human consumption | May 20, 2025 |
| 7,802,827 | SUPER CALM | IC 005: Powdered nutritional supplement drink mix for human consumption. | May 20, 2025 |
| 7,802,826 | SUPER CALM | IC 005: Powdered nutritional supplement drink mix for human consumption | May 20, 2025 |

| **SUPERCALM COPYRIGHTS** | | | |
|---|---|---|---|
| **Super Calm Pouch Variety Pack** (U.S. Copyright Reg. No. VA0002421988) | **Super Calm Stick Pack** (U.S. Copyright Reg. No. VA0002421986) | **Super Calm Tub Pack** (U.S. Copyright Reg. No. VA0002421984) | **Super Calm – 1** (U.S. Copyright Reg. No. VA0002429898) |
| **Super Calm - 2** (U.S. Copyright Reg. No. VA0002429896) | **Super Calm - 3** (U.S. Copyright Reg. No. VA0002429895) | **Super Calm - 4** (U.S. Copyright Reg. No. VA0002434905) | **Super Calm - 5** (U.S. Copyright Reg. No. VA0002429898) |

4

10. In an effort to illegally and deceptively profit from the unauthorized use of the Supercalm Trademarks and Supercalm Copyrights, Defendants created numerous Defendant Internet Stores, intentionally designed in look, feeling, and suggestion to give the impression to consumers that they are legitimate merchants selling products manufactured by or authorized by Plaintiff, with Defendants' ultimate intention being to deceive unknowing consumers into purchasing unauthorized and infringing products (hereinafter referred to as "Counterfeit Products").

11. Defendant Internet Stores share numerous unique identifiers, such as design elements and similarities of the unauthorized products offered for sale, establishing a logical relationship between Defendants, and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Furthermore, there is a logical relationship among the Defendants. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal operation.

12. Plaintiff filed this action to combat Defendants' ongoing infringement of Plaintiff's Intellectual Property. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, loss of control over its creative content, and loss of exclusivity over its valuable trademarks and copyrights as a result of Defendants' actions and is thus seeking injunctive and monetary relief.

## THE PLAINTIFF

13. Founded in 2021, Vitalize Official LLC, is the owner, creator and developer of the Nello wellness brand. Specifically, Plaintiff developed Nello "Supercalm"—which is an adaptogenic powdered drink mix designed to promote relaxation and focus (herein, the "Supercalm Products").

14. The Supercalm Products feature the Supercalm Trademarks and Supercalm Copyrights.

5

15. Plaintiff is the owner of the Supercalm Trademarks, which have been used continuously and exclusively by the Plaintiff and have never been abandoned. The registrations are inherently distinctive, valid, subsisting, and in full force and effect. The registrations of the Supercalm Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the Supercalm Trademarks pursuant to 15 U.S.C. § 1057(b).

16. Plaintiff is also the owner of Supercalm Copyrights, which consist of multiple images featuring the Supercalm Products, the product packaging, and images created for marketing and promotional purposes.

17. Plaintiff has invested substantial time, money, and other resources in developing advertising, and otherwise promoting its Supercalm Products, investing approximately $20 million annually. Plaintiff uses its Intellectual Property in its direct-to-consumer marketing and distribution strategy, and primarily uses its official online store, try.drinknello.com, and platforms like Tik Tok Shop and Amazon to reach consumers and to sell its products.

18. The Supercalm Products are the #1 selling wellness brand on TikTok Shop, have received numerous accolades on YouTube and Amazon, and have achieved rapid growth and success.

19. Plaintiff does not license its Vitalize Intellectual Property, and it is the exclusive source of all Supercalm Products. Plaintiff has not licensed or authorized Defendants to use its Vitalize Intellectual Property in any manner.

20. The Supercalm Products are recognized and exclusively associated by consumers, the public, and the industry as products sourced from Plaintiff. As such, the recognition and goodwill associated with the brand is of incalculable and inestimable value to the Plaintiff.

21. Plaintiff has made efforts to protect its interests in and to the Supercalm Trademarks and Copyrights. Plaintiff is the only business authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the Supercalm Copyrights and/or Supercalm Trademarks. Plaintiff has not licensed or authorized Defendants to use the Supercalm Copyrights and/or Supercalm Trademarks.

**THE DEFENDANTS**

22. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including Illinois, and within this Judicial District, through the operation of fully interactive commercial websites and online marketplace accounts operating under the Seller Aliases. Defendants target the United States, including Illinois, and have sold and continue to sell Counterfeit Products to consumers within the United States, Illinois, and this Judicial District.

**THE DEFENDANTS' UNLAWFUL CONDUCT**

23. The success of the Supercalm Products has resulted in significant counterfeiting and intentional copying. Plaintiff has implemented an anti-counterfeiting program and identified numerous Seller Aliases linked to fully interactive websites and marketplace listings, including the Defendant Internet Stores, which are offering for sale, selling, and importing Counterfeit Products to consumers in this Judicial District and throughout the United States. These Defendant Internet Stores are operated on at least Alibaba Group Holding Ltd. ("Alibaba") and eBay, Inc ("eBay") (collectively the "Online Marketplaces").

24. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $350 billion in annual online sales.[2] According to an

---

[2] *See* "2020 Review of Notorious Markets for Counterfeiting and Piracy," OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, Executive Office of the President. 85 FR 62006 (October 1, 2020).

intellectual property rights seizures statistics report issued by Homeland Security and the U.S. Customs and Border Protection, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in the fiscal year 2020 was over $1.3 billion.[3] Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. *Id.*

25. As addressed in the *New York Times* and by the U.S. Dept. of Homeland Security, and as reflected in the increase of federal lawsuits filed against sellers offering for sale and selling infringing and/or counterfeit products on the above-mentioned digital marketplaces, an astronomical number of counterfeit and infringing products are offered for sale and sold on these digital marketplaces at a rampant rate.[4]

26. Upon information and belief, Defendants facilitate sales by designing their Internet stores and product listings to appear to unknowing consumers as authorized online retailers, outlet stores, or wholesalers selling genuine Supercalm Products. The Defendants perpetuate an illusion of legitimacy using indicia of authenticity and security that consumers have come to associate with authorized retailers.

27. Upon information and belief, Defendants also deceive unknowing consumers by using the Supercalm Trademarks, without authorization within the content, text, and/or metatags of their online marketplace listings, in order to attract and manipulate search engines into identifying the Defendant Internet Stores as legitimate websites for authentic Supercalm Products. Defendants also employ other unauthorized search engine optimization ("SEO") tactics and social

---

[3] *See* "Intellectual Property Rights Fiscal Year 2020 Seizure Statistics," U.S. CUSTOMS AND BORDER PROTECTION. CBP Publication No. 1542-092 (September 21, 2021).
[4] *See* Ganda Suthivarakom, *Welcome to the Era of Fake Products*, N.Y. TIMES (Feb. 11, 2020), https://www.nytimes.com/wirecutter/blog/amazon-counterfeit-fake-products/. *See also Combating Trafficking in Counterfeit and Pirated Goods*, U.S. DEPT. OF HOMELAND SECURITY (Jan. 24, 2020), available at https://www.dhs.gov/sites/default/ files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf.

media spamming so that the Defendant Internet Stores show up at or near the top of relevant search results. These tactics are meant to, and are successful in, misdirecting consumers searching for genuine Supercalm Products.

28. Upon information and belief, Defendants operate in a collective and organized manner, often monitor trademark infringement litigation alert websites, are in continuous and active concert with one another, are in frequent communication with each other, utilize online chat platforms and groups, and use these collective efforts in an attempt to avoid liability and intellectual property enforcement efforts.[5] Furthermore, there is a substantial evidentiary overlap in Defendants' behavior, conduct, individual acts of infringement, physical products, return addresses, and identical product batch numbers, thus constituting a collective enterprise.

29. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the Seller Aliases, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are some of many common tactics used by Defendants to conceal their identities, the full scope and interworking of their massive infringing operation, and to avoid being shut down.

30. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores, including, but by no means limited to: (1) virtually identical product listings and products sold, even though different aliases were used to register the respective online marketplace accounts; (2) identical return addresses on the physical products shipped by Defendants; (3) similarities of the physical Counterfeit Products themselves, including the

---

[5] For this reason, Plaintiff is concurrently filing a Motion for Leave to File Certain Documents Under Seal and Temporarily Proceed Under A Pseudonym.

9

products sharing identical batch numbers, and indicia of being related to one another, suggesting that the illegal products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated; and, (4) other notable common features such as the use of the same text and images.

31. Further, illegal operators, like Defendants, typically operate multiple payment processor and merchant accounts, including but not limited to, one or more financial accounts operated through platforms such as PayPal, Inc. ("PayPal"), Payoneer, Inc. ("Payoneer"), Stripe, Inc. ("Stripe"), and Alipay.com Co., Ltd. ("Alipay") (collectively referred to hereinafter as "Payment Processors"), and hide behind layers of payment gateways so they can continue operation in spite of any enforcement efforts. Additionally, and upon information and belief, and as financial transaction logs in previous similar cases have shown, Defendants often maintain offshore bank accounts and regularly move funds from their Payment Processor accounts to said offshore bank accounts, outside the jurisdiction of this Court.

32. Defendants, without any authorization or license, have knowingly and willfully infringed Plaintiff's rights in the Supercalm Trademarks and Supercalm Copyrights, in connection with the manufacturing, advertisement, distribution, offering for sale, and sale of illegal, infringing, and counterfeit products into the United States and Illinois.

33. In committing these acts, Defendants have, among other things, willfully and in bad faith, committed the following, all of which have and will continue to cause irreparable harm to the Plaintiff: infringed upon and used counterfeit versions of the Supercalm Trademarks and Supercalm Copyrights; created, manufactured, sold, and offered to sell Counterfeit Supercalm Products; used Plaintiff's Intellectual Property in an unauthorized manner in order to sell, advertise,

describe, mislead, deceive, and trade upon the Supercalm brand; engaged in unfair competition; and unfairly and unjustly profited from such activities at the expense of the Plaintiff.

34. Plaintiff does not yet know the full extent and identity of the channels through which Defendants source and sell the Counterfeit Products. Defendants directed, supervised, and/or controlled activity infringing on Plaintiff's Trademarks and/or Copyrights, and the sale of Counterfeit Products. Defendants have a direct financial interest in, and gain a direct financial benefit from infringing activity and realize profits from the sale of Counterfeit Products.

35. By engaging in the illegal conduct outlined herein, in addition to directly organizing and effectuating such infringing activities, Defendants also induced, caused, and materially contributed to infringing conduct by others, including the other Defendants. There is a causal relationship between the infringing activity and the financial benefit reaped by Defendants.

36. Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

37. Plaintiff repleads and incorporates by reference each and every allegation set forth in paragraphs 1-36 as if fully set forth herein.

38. Plaintiff is the owner of distinctive federally registered Supercalm Trademarks, which have significant value to the Plaintiff.

39. Defendants have used the Supercalm Trademarks without authorization in commerce and/or offered Counterfeit Products featuring the federally registered Supercalm Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of counterfeit goods.

40. Without the authorization or consent of the Plaintiff, and with knowledge of Plaintiff's ownership rights in its Supercalm Trademarks, and with knowledge that Defendants'

11

Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied, and/or colorably imitated the Supercalm Trademarks and/or used spurious designations that are identical with, or substantially indistinguishable from, the Supercalm Trademarks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale, and/or sale of Counterfeit Products.

41. Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold their Counterfeit Products to the purchasing public in direct competition with Vitalize and the Supercalm Products, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Supercalm Trademarks through their participation in such activities.

42. Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of the Supercalm Trademarks to packaging, point-of-purchase materials, promotions, and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public, and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with, or are otherwise authorized by the Plaintiff, through which Defendants make substantial profits and gains to which they are not entitled in law or equity.

43. Defendants' unauthorized use of the Supercalm Trademarks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not

authorized or licensed by the Plaintiff, and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Supercalm Trademarks.

44. Defendants intentionally induce others to infringe upon Plaintiff's Trademarks and/or continues to supply services with the knowledge that the recipient is using such services to engage in such trademark infringement. Defendants have the right and ability to supervise the infringing activity and have an obvious and direct financial interest in the counterfeit activity.

45. Defendants' actions constitute willful counterfeiting of the Supercalm Trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

46. Defendants' continued intentional use of the Supercalm Trademarks without the consent or authorization of Plaintiff, constitutes intentional infringement of Plaintiff's federally registered Supercalm Trademarks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

47. As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss, irreparable injury, and damage to the Plaintiff, its business, its reputation, and its valuable rights in and to the Supercalm Trademarks and the goodwill associated therewith, in an amount as yet unknown. Plaintiff has no adequate remedy at law for this injury, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss, and damage to Plaintiff and its valuable Supercalm Trademarks.

48. Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as well as all gains, profits, and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages, and/or

statutory damages of up to $2,000,000 per-counterfeit mark per-type of goods sold, offered for sale, or distributed, and reasonable attorneys' fees and costs.

## COUNT II
### FALSE DESIGNATION OF ORIGIN, PASSING OFF, & UNFAIR COMPETITION
### (15 U.S.C. § 1125(a)/LANHAM ACT § 43(a))

49. Plaintiff repleads and incorporates by reference each and every allegation set forth in paragraphs 1-36 as if fully set forth herein.

50. Plaintiff, as the owner of all right, title, and interest in and to the Supercalm Trademarks has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

51. Plaintiff's Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office on the Principal Register; the Supercalm Trademarks have been continuously used and have never been abandoned; the registrations for the Supercalm Trademarks are valid, subsisting, and in full force and effect; and many are incontestable pursuant to 15 U.S.C. § 1065.

52. Defendants' promotion, marketing, offering for sale, and sale of infringing and Counterfeit Products has created, and continues to create, a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiff or as to the origin, sponsorship, or approval of Defendants' infringing products by Plaintiff.

53. By using the Supercalm Trademarks in connection with the sale of unauthorized products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the unauthorized products.

54. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the unauthorized products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

55. Upon information and belief, Defendants' aforementioned wrongful actions have been deliberate, willful, and intended to cause confusion, to cause mistake, and to deceive the purchasing public, with the intent to trade on the goodwill and reputation of Vitalize, its Supercalm Products, and the Supercalm Trademarks.

56. As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Vitalize by depriving Plaintiff of sales of its Supercalm Products and by depriving Vitalize of the value of its Supercalm Trademarks as commercial assetss in an amount as yet unknown.

57. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

**COUNT III**
**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS § 510, *et seq*.)**

58. Plaintiff repleads and incorporates by reference each and every allegation set forth in paragraphs 1-36 as if fully set forth herein.

59. Defendants have engaged in acts violating Illinois law, including, but not limited to, passing off their unauthorized products as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of Defendants' goods, thus causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Supercalm Products, through Defendants' representation that Defendants' Counterfeit Products have Plaintiff's approval, when they do not.

60. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

61. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## COUNT IV
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 501(a))

62. Plaintiff repleads and incorporates by reference each and every allegation set forth in paragraphs 1-36 as if fully set forth herein.

63. The Supercalm Copyrights are the subject of valid copyright registrations which have significant value to the Plaintiff.

64. At all relevant times, Plaintiff has held the copyright registrations and exclusive rights to works belonging to Vitalize, including but not limited to the Supercalm Copyrights.

65. Upon information and belief, Defendants had access to the copyrighted work through Plaintiff's normal business activities. After accessing Plaintiff's work, Defendants wrongfully created copies of the copyrighted work without Plaintiff's consent, and engaged in, and continue to engage in acts of widespread infringement.

66. Plaintiff is informed and thereon alleges, is informed, and thereon alleges, that Defendants further infringed the Supercalm Copyrights by making, or causing to be made, derivative works by producing and distributing unauthorized reproductions of the Supercalm Copyrights, without the permission of Vitalize.

67. Defendants, without the permission or consent of the Plaintiff, have sold, and continue to sell Counterfeit Products featuring infringing works of Plaintiff's Copyrights online. Defendants have violated Plaintiff's exclusive rights of reproduction and distribution.

Defendants' actions constitute an infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. §501 *et seq*.).

68. Further, as a direct result of the Defendants' acts of copyright infringement, Defendants have obtained profits they would not have otherwise realized but for their infringement of Plaintiff's Copyrights. Plaintiff is entitled to disgorgement of Defendants' profits, both directly and indirectly attributable to said infringement.

69. Defendants, with knowledge of Plaintiff's Copyrights, indirectly infringed Plaintiff's Copyrights by encouraging, causing, and materially contributing to infringing conduct by others. Defendants knowingly engaged in, supervised, and/or controlled infringing activity and the sale of Counterfeit Products, and have a direct financial interest in, and stood to gain a direct financial benefit from, such infringing activity.

70. As a result of Defendants' infringement of Plaintiff's exclusive rights under U.S. Copyright Law, Plaintiff is entitled to relief pursuant to 17 U.S.C. § 504.

71. Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be measured or compensated by monetary damages. Plaintiff has no adequate remedy at law. As such, pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's Supercalm Copyrights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a. using the Supercalm Trademarks and/or Copyrights, or any reproductions, copies, or colorable imitations thereof, in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an authorized Supercalm Product, or is not authorized by Plaintiff to be sold in connection with Plaintiff's Intellectual Property;

b. passing off, inducing, or enabling others to sell or pass off any product not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale using Plaintiff's Intellectual Property;

c. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Plaintiff to be sold or offered for sale, and which bear the Supercalm Trademarks, or which are derived from the Supercalm Copyrights;

d. further infringing Plaintiff's Intellectual Property and damaging Plaintiff's goodwill;

e. using, linking to, transferring, selling, exercising control over the Defendant Internet Stores, Defendant product listings, or online marketplace account that is being used to sell products or inventory not authorized by Plaintiff which use Plaintiff's Intellectual Property;

f. operating and/or hosting websites at the Defendant Internet Stores, and any other online marketplaces registered to or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of products or inventory not authorized by Plaintiff which use Plaintiff's Intellectual Property;

2) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any Online Marketplaces and Payment Processors, and any related entities, shall:

    a. disable and cease providing services for any accounts through which Defendants engage in the sale of unauthorized products, which use Plaintiff's Intellectual Property, including any accounts associated with Defendants listed on the Amended Schedule A;

    b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of products not authorized by Plaintiff which use Plaintiff's Intellectual Property; and,

    c. take all steps necessary to prevent links to the Defendant Internet Stores identified on the Amended Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

3) That Defendants account for, and pay to, Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged;

4) For Judgment in favor of Plaintiff against Defendants that they have willfully infringed Plaintiff's rights in its federally registered Trademarks, pursuant to 15 U.S.C. § 1114;

5) That Plaintiff be awarded actual damages, statutory damages, and/or other available damages, at the election of Plaintiff; and that the amount of damages for infringement are increased by a sum not to exceed three times the amount thereof as provided by 15 U.S.C. § 1117;

6) For Judgment in favor of Plaintiff against Defendants that they have: a) willfully infringed Plaintiff's rights in its federally registered copyrights pursuant to 17 U.S.C. § 501; and,

b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Amended Complaint;

7) That Plaintiff be awarded actual damages, statutory damages, and/or other available damages pursuant to 17 U.S.C. § 504, at the election of Plaintiff;

8) That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

9) Any and all other relief that this Court deems just and proper.

|  |  |
|---|---|
| Dated: July 2, 2025 | Respectfully submitted, |
|  | */s/ John J. Mariane*<br>Ann Marie Sullivan<br>Alison K. Carter<br>Gouthami V. Tufts<br>John J. Mariane |
|  | **SULLIVAN & CARTER, LLP**<br>111 W. Jackson Blvd., Ste 1700<br>Chicago, Illinois 60604<br>www.scip.law<br>929-724-7529<br>j.mariane@scip.law |
|  | ***ATTORNEYS FOR PLAINTIFF*** |